# UNITED STATES BANKRUPTCY COURT
# DISTRICT OF NEW MEXICO

In re:   STEVEN C. SCHUMANN and                                        No. 7-11-11273 JA
         BEVERLY K. SCHUMANN,

Debtors.

## MEMORANDUM OPINION

More than four years after Steven C. Schumann and Beverly K. Schumann (together, "Debtors") received a discharge in this Chapter 7 case, and nearly five years after Deutsche Bank Trust Company Americas as Trustee ("Deutsche Bank") obtained a default judgment for foreclosure against Debtors in state court in violation of the automatic stay, the Court held a final, evidentiary hearing on Deutsche Bank's motion to annul the automatic stay.  *See* Deutsche Bank Trust Company Americas as Trustee's Motion to Abandon and for Order Annulling Automatic Stay Regarding Property Located at 1502 Plaza Encantada NW, Albuquerque ("Motion to Annul Stay") – Docket No. 10.  Karla Poe appeared at the hearing on behalf of Deutsche Bank, and Ronald Holmes appeared at the hearing on behalf of Debtors.  After considering the evidence presented at the final hearing in light of the applicable case law, the Court concludes that the automatic stay should be annulled retroactively to March 29, 2011, the day before the date of entry of the default judgment for foreclosure in state court.

### FACTS AND PROCEDURAL HISTORY[1]

The relevant underlying facts are largely uncontested.  Debtors live at 1502 Plaza Encantada NW in Albuquerque, New Mexico (the "Property").  Deutsche Bank claims an interest in the Property by virtue of a promissory note executed by Debtors, secured by a

---

[1] With the parties' consent, the Court took judicial notice of the documents filed in Debtors' bankruptcy case.

mortgage on the Property.  *See* Note - Exhibit 1; Mortgage - Exhibit 2; and Assignment of Mortgage – Exhibit 3.  The Property is Debtors' primary residence.

Debtors filed a voluntary petition under Chapter 7 of the Bankruptcy Code on Friday, March 25, 2011.  *See* Docket No. 1; Exhibit 24. They scheduled the Property on Schedule A, and listed GMAC as a secured creditor based on a first mortgage against the Property. *See* Exhibit A. At that time GMAC was the loan servicer for Deutsche Bank, which held the note and mortgage. Ocwen Loan Servicing, LLC serves as the current loan servicer; it became the loan servicer in 2013.  Debtors' Statement of Intention filed in their Chapter 7 bankruptcy case reflected an intent to retain the Property and negotiate a loan modification with the creditor.  *See* Exhibit No. 25. Ronald E. Holmes has served as Debtors' bankruptcy counsel since the filing of this Chapter 7 case.

Before the commencement of Debtors' Chapter 7 bankruptcy case, Deutsche Bank initiated foreclosure proceedings against Mr. Schumann and others in the Second Judicial District Court, County of Bernalillo State of New Mexico as Cause No. CV-2009-03539 (the "State Court Action") to foreclose its interest in the Property.  *See* First Amended Complaint for Foreclosure filed April 7, 2009 – Exhibit 16.  Karen Bradley represented Deutsche Bank in the State Court Action.  Mr. Schumann did not retain counsel to represent him in the State Court Action.  He filed an answer in the State Court Action asserting that the lender had agreed to a loan modification and to stop the foreclosure.  *See* Answer to Complaint, filed May 22, 2009 – Exhibit 17 ("Homecomings Financial, as agent for the plaintiff has agreed to a loan modification of the referenced mortgage and agreed to stop this foreclosure.").  Mr. Schumann listed his address in the Answer to Complaint as 5901J Wyoming NE #307, Albuquerque, NM 87109 (the "Wyoming Address"). *Id.*

2

On June 1, 2010, the state court entered an order dismissing the State Court Acton for lack of prosecution which authorized any party to move to reinstate the action. *See* Exhibit B. The State Court Action was reinstated on October 29, 2010 on a motion filed by Deutsche Bank. *Id.*

On June 3, 2010, after the state court action had been dismissed, Deutsche Bank filed a Motion for Summary and Default Judgment ("Summary Judgment Motion") in the State Court Action. *See* Exhibit 18. Deutsche Bank mailed a copy of the Motion for Summary and Default Judgment to Mr. Schuman at the Wyoming Address. *Id.* Mr. Schumann did not file a response to the Summary Judgment Motion.

On January 13, 2011, the state court issued and filed a Notice of Hearing on the Summary Judgment Motion in the State Court Action. *See* Exhibit 19. A copy of the Notice of Hearing was sent to Mr. Schumann by mail at the Wyoming Address and by email to steve@bedrockwalls.com. *Id.* The Notice of Hearing set a hearing in the State Court Action on the Summary Judgment Motion on March 30, 2011. *Id.* Mr. Schumann did not appear at the hearing on the Summary Judgment Motion in the State Court Action held March 30, 2011. A Summary and Default Judgment was entered against Mr. Schumann in the State Court Action on March 31, 2011 at 12:22 p.m. *See* Exhibit 20.

The Bankruptcy Noticing Center ("BNC") sent a notice of the commencement of Debtors' bankruptcy case to all creditors and parties in interest in the case by first class mail on March 30, 2011. *See* Certificate of Notice – Docket No. 8. The Certificate of Notice from the BNC reflects a "Date Revd" by the BNC of March 28, 2011, the Monday after the date of commencement of Debtors' bankruptcy case on Friday, March 25, 2011. *Id.* The Certificate of Notice shows that the BNC sent the notice to GMAC in Waterloo, IA. *Id.*

Karen Bradley, counsel for Deutsche Bank in the State Court Action, did not have actual notice of the Debtors' bankruptcy case before March 31, 2011, the date the Summary Default Judgment was entered. Neither Deutsche Bank nor GMAC received notice of the Debtors' bankruptcy case before March 30, 2011, the date of the hearing on the Summary Judgment Motion in the State Court Action. Mail sent by the BNC on March 30, 2011 could not have been received on the same date as the date of mailing.

On April 1, 2011, Karen Bradley received a referral from her client requesting her to seek relief from the automatic stay in Debtors' bankruptcy case. She filed a notice of bankruptcy in the State Court Action on April 7, 2011. About two weeks later, Ron Holmes, the Debtors' bankruptcy counsel, also filed a Notice of Bankruptcy Proceedings in the State Court Action. *See* Exhibit 21. Deutsche Bank filed the Motion seeking to annul the automatic stay on April 26, 2011. *See* Exhibit 27. In response to the Motion, Debtors again expressed an intent to negotiate a loan modification. *See* Debtors' Response to Motion to Lift Stay – Exhibit 28. Debtors did not assert any other grounds in opposition to the Motion. *Id.* The Court held a preliminary hearing on the Motion on June 23, 2011 and scheduled a final hearing on the Motion on August 2, 2011. The Court did not hold a final hearing on the Motion in August 2011 because the Court granted Debtors a discharge and Debtors' bankruptcy case was closed on July 7, 2011, before the date of the scheduled final hearing. Deutsche Bank did not seek to reopen the bankruptcy case to obtain a final hearing on its request to annul the stay until September 17, 2015.

Since 2008, there have been several communications from various loan servicers to Mr. Schumann regarding possible loan modifications and loss mitigation efforts. *See* Letter dated December 1, 2008 from Homecomings Financial, A GMAC Company to Steve C. Schumann – Exhibit 4; Foreclosure Repayment Agreement from GMAC Mortgage to Steve C. Schumann

4

dated July 31, 2009 - Exhibit 5;  Foreclosure Repayment Agreement from GMAC Mortgage to Steve C. Schumann dated September 29, 2009 – Exhibit 6; Letter dated March 30, 2010 from GMAC Mortgage to Steve Schumann – Exhibit 7; Letter dated August 17, 2011 from GMAC Mortgage to Steve C. Schumann – Exhibit 8; Letter dated October 24, 2013 from Ocwen Loan Servicing, LLC to Steve C. Schumann – Exhibit 9; Letter dated November 22, 2013 from Ocwen Loan Servicing, LLC to Steve C. Schumann – Exhibit 10.  Negotiations between Debtors and Deutsche Bank, and its servicers, continued after the Debtors' bankruptcy case was closed. Deutsche Bank took no further action to foreclose the Property after the bankruptcy case was closed through May of 2015[2] because of ongoing settlement discussions.  The Debtors and Deutsche Bank have not reached an agreement to modify the terms of the loan, and the Debtors remain in default under the promissory note and mortgage.  Karen Bradley no longer represents Deutsche Bank in the State Court Action.[3]

Upon Deutsche Bank's motion to reopen the Debtors' bankruptcy case filed September 17, 2015 for the purpose of adjudicating its Motion seeking to annul the automatic stay, *see* Docket No. 23, the Court reopened the bankruptcy case and held an evidentiary hearing on the Motion on January 21, 2016.

## DISCUSSION

Upon the filing of a voluntary petition, 11 U.S.C. § 362[4] imposes an automatic stay against the continuation of actions against the debtor commenced before the commencement of the debtor's bankruptcy case.  11 U.S.C. § 362(a)(1).  With exceptions not applicable here, the

---

[2] The docket from the State Court Action reflects that a motion for substitution of special master was filed on May 15, 2015.  *See* Exhibit B.  The last entry on the docket from the State Court Action is an entry of appearance and notice of change of responsible attorney filed October 26, 2015.
[3] The last entry on the docket from the State Court Action is an entry of appearance and notice of change of responsible attorney filed October 26, 2015.  *See* Exhibit B.
[4] All further statutory references in this Memorandum Opinion are to Title 11 of the United States Code.

5

automatic stay "prevents creditors from taking further action against . . . [the debtor] except through the bankruptcy court." *In re Johnson,* 575 F.3d 1079, 1083 (10th Cir. 2009) (quoting *Price v. Rochford,* 947 F.2d 829, 831 (7th Cir. 1991)). Actions taken in violation of the automatic stay are void. *Ellis v. Consol. Diesel Elec. Corp.,* 894 F.2d 371, 372 (10th Cir. 1990) ("It is well established that any action taken in violation of the stay is void and without effect.") (citations omitted). *See also In re Calder,* 907 F.2d 953, 956 (10th Cir. 1990) ("Ordinarily, any action taken in violation of the stay is void and without effect, even where there is no actual notice of the existence of the stay.") (internal citations omitted). The Summary and Default Judgment was entered in the State Court Action after the commencement of Debtors' Chapter 7 bankruptcy case while the automatic stay was in effect. Deutsche Bank seeks to annul the automatic stay retroactively to March 30, 2011, the date of entry of the Summary and Default Judgment, for the purpose of validating the Summary and Default Judgment.

Section 362(d)(1) provides for relief from the automatic stay upon a finding of "cause" and contemplates *nunc pro tunc* relief. *See* 11 U.S.C. § 362(d)(1) ("On request of a party in interest and after notice and a hearing, the court shall grant relief from the stay provided under subsection (a) of this section, such as by terminating, *annulling*, modifying, or conditioning such stay . . . for cause") (emphasis added). Thus, a creditor may obtain retroactive relief from the automatic stay through annulment. *See Franklin Sav. Assn' v. Office of Thrift Supervision,* 31 F.3d 1020, 1023 (10th Cir. 1994) (acknowledging that "bankruptcy courts have the authority to 'annul' a stay") (citing 11 U.S.C. § 362(d)); *Albany Partners, Ltd. v. Westbrook (In re Albany Partners, Ltd.),* 749 F.2d 670, 675 (11th Cir. 1984) ("The word 'annulling' in . . . [§ 362(d)] evidently contemplates the power of bankruptcy courts to grant relief from the stay which has retroactive effect . . ."). Annulment of the automatic stay retroactively validates post-petition

6

actions taken in violation of the automatic stay. *See In re Schwartz,* 954 F.2d 569, 573 (9th Cir. 1992) (reasoning that "[i]f a creditor obtains retroactive relief under section 362(d), there is no violation of the automatic stay").

Whether to annul the automatic stay falls within the Court's sound discretion. *See Franklin Sav.,* 31 F.3d at 1023 (reviewing district court's decision whether to grant retroactive relief from the automatic stay under an abuse of discretion standard); *In re Barr,* 318 B.R. 592, 598 (Bankr.M.D.Fla. 2004) ("'a determination of whether to grant relief from stay retroactively is within the wide latitude of the Court'") (quoting *In re Stockwell,* 262 B.R. 275, 280 (Bankr.D.Vt. 2001)). Even so, annulment of the automatic stay "thereby reinstating previous claims retroactively . . . is rare and probably available only to claimants who were honestly ignorant of the bankruptcy stay." *Franklin Sav.,* 31 F.2d at 1023 (citation omitted).

Several factors are relevant to the determination of whether *nunc pro tunc* relief from the automatic stay should be granted, including:

1) whether the creditor had actual or constructive knowledge of the debtor's bankruptcy filing when it acted in violation of the automatic stay;[5]
2) whether the debtor filed the bankruptcy case in bad faith or otherwise acted in bad faith;[6]
3) whether "grounds for relief from the stay existed and a motion, if filed, would likely have been granted prior to the automatic stay violation";[7]
4) how quickly the creditor sought annulment of the automatic stay upon learning of the debtor's bankruptcy filing;[8]

---

[5] *See Franklin Sav.,* 31 F.3d at 1023 (observing that annulment is "probably available only to claimants who were honestly ignorant of the bankruptcy stay.").

[6] *See In re Myers,* 491 F.3d 120, 128 (3d Cir. 2007) (observing that "[e]very court of appeals to consider the issue has held that whether the filing was in bad faith is relevant to whether the bankruptcy court should annul the automatic stay.") (citations omitted); *In re Veltmann,* 2008 WL 5157892, *2 (Bankr.D.N.M. June 7, 2008) ("whether the debtor filed the petition in bad faith or otherwise acted in bad faith" is a factor for the court to consider in determining whether to annul the automatic stay) (citations omitted).

[7] *In re Stockwell,* 262 B.R. 275, 281 (Bankr.D.Vt. 2001) (citations omitted). *See also In re Ford,* 296 B.R. 537, 556(Bankr.N.D.Ga. 2003) (annulment of automatic stay not warranted where there was sufficient equity in the debtor's property to protect the creditor and stay relief would not have been granted had it been sought before the foreclosure sale).

[8] *See In re Fjeldsted,* 293 B.R. 12, 25 (9th Cir. BAP 2003) ("How quickly creditors moved for annulment" is a factor to consider when deciding whether to annul the stay). The Ninth Circuit Bankruptcy Appellate Panel identified twelve factors:

7

5) whether the creditor continued to violate the stay after learning of the debtor's bankruptcy filing;
6) whether the debtor remained "stealthily silent"[9] in the face of the creditor's unknowing violation of the automatic stay; and
7) whether the creditor would be prejudiced if the stay were not annulled.[10]

*Burden of Proof*

Subsection (g) allocates the burden of proof for motions seeking relief from the automatic stay, including annulment, under subsection (d).[11] Consistent with 362(g), "the creditor seeking retroactive relief must first show the presence of circumstances warranting annulment of the stay, and the debtor then bears the ultimate burden of proving that the request for retroactive relief from the stay should be denied." *Barr,* 318 B.R. at 599 (citing *Stockwell,* 262 B.R. at 280). *See also, In re Nat'l Envtl. Waste Corp.,* 191 B.R. 832, 836 (Bankr.C.D.Cal. 1996), *aff'd,* 129 F.3d

---

 1. Number of filings;
 2. Whether, in a repeat filing case, the circumstances indicate an intention to delay and hinder creditors;
 3. A weighing of the extent of prejudice to creditors or third parties if the stay relief is not made retroactive, including whether harm exists to a bona fide purchaser;
 4. The Debtor's overall good faith (totality of circumstances test);
 5. Whether creditors knew of stay but nonetheless took action, thus compounding the problem;
 6. Whether the debtor has complied, and is otherwise complying, with the Bankruptcy Code and Rules;
 7. The relative ease of restoring parties to the *status quo ante;*
 8. The costs of annulment to debtors and creditors;
 9. How quickly creditors moved for annulment, or how quickly debtors moved to set aside the sale or violative conduct;
 10. Whether, after learning of the bankruptcy, creditors proceeded to take steps in continued violation of the stay, or whether they moved expeditiously to gain relief;
 11. Whether annulment of the stay will cause irreparable injury to the debtor;
 12. Whether stay relief will promote judicial economy or other efficiencies.
 *Fjeldsted,* 293 B.R. at 25.

[9] *Calder,* 907 F.2d at 956 (acknowledging that a debtor is not entitled to the protections of the Bankruptcy Code if the debtor remains "stealthily silent" while the creditor unknowingly violates the automatic stay) (citing *In re Smith Corset Shops, Inc.,* 696 F.2d 971, 976-77 (1st Cir. 1982)).

[10] *See In re Kohar,* 525 B.R. 248, 258 (Bankr.W.D.Pa. 2015) (identifying three factors most important to the decision whether to grant *nunc pro tunc* relief from the stay: 1) whether the creditor was aware of the bankruptcy filing; 2) whether the debtor engaged in inequitable conduct; and 3) whether the creditor would be prejudiced by denial of *nunc pro tunc* relief).

[11] Section 362(g) provides:
 In any hearing under subsection (d) or (e) of this section concerning relief from the stay of any act under subsection (a) of this section—
  (1) the party requesting such relief has the burden of proof on the issue of the debtor's equity in property; and
  (2) the party opposing such relief has the burden of proof on all other issues.
 11 U.S.C. § 362(g).

1052 (9th Cir. 1997) ("Pursuant to Section 362(g)(2), the debtor has the burden of proof to demonstrate that 'cause' does not exist to annul the stay under Section 362(d)(1)."); *In re Rizzotto,* 2009 WL 2477232, *3 (Bankr.D.Mont. Aug. 11, 2009) ("the debtor has the burden of proof to show that the stay should not be . . . annulled."). However, if the debtor's equity in property is relevant, the movant has the burden of proof on the issue of the debtor's equity in the property. 11 U.S.C. § 362(g)(1). The Debtors therefore bear the ultimate burden of persuading the Court that the surrounding facts and circumstances do not warrant retroactive relief from the automatic stay through annulment.

In applying the relevant factors to the facts in this case, the Court concludes that annulment of the automatic stay is appropriate. Factors 1), 3), 5) and 7) weigh in favor of annulment. Debtors filed their Chapter 7 bankruptcy case the Friday before the hearing on the Motion for Summary and Default Judgment in the State Court Action. Neither Deutsche Bank nor its counsel knew of the bankruptcy filing on March 30, 2011, the date of the hearing in the State Court Action. Notice of the bankruptcy case through the BNC occurred on the same date. There is no evidence before the Court that Deutsche Bank, its loan servicer, or its counsel knew of the bankruptcy filing as of 12:22 p.m. on March 31, 2011 when the state court entered the Summary and Default Judgment in the State Court Action. To the contrary, counsel for Deutsche Bank testified that she first learned of the Debtors' bankruptcy filing on April 1, 2011, *after* the Summary and Default Judgment had already been entered. Neither Debtors nor their counsel notified Deutsche Bank of the bankruptcy filing prior to entry of the Summary and Default Judgment. Debtors concede that the entry of the Summary and Default Judgment was a "technical" violation of the stay taken without knowledge of their bankruptcy filing.[12]

---

[12] A technical violation of the automatic stay occurs when a creditor commits a stay violation "without notice or knowledge of the bankruptcy case in which the stay was violated." *Kline v. Tiedemann (In re Kline),* 424 B.R. 516,

9

Had the Court held a hearing on the Motion to Annul Stay before it closed the bankruptcy case, the Court likely would have granted the motion. In their objection to the Motion to Annul Stay, Debtors raised no defense other than to state they were seeking a loan modification.[13] This Court regards that to be an issue for the state court in a foreclosure action, not a reason to deny retroactive relief from the automatic stay. In addition, Debtors have presented no evidence to this Court that they have a good faith defense to foreclosure. Consequently, stay relief would have also likely been granted had Deutsche Bank known of the Debtors' bankruptcy filing in time to seek relief from the stay to continue with its foreclosure in the State Court Action before the entry of the Summary and Default Judgment.

Deutsche Bank has not taken any action to foreclose its interest in the Property based on the Default and Summary Judgment. If the automatic stay were not annulled to validate the Summary and Default Judgment, Deutsche Bank would be prejudiced by having to begin afresh in the State Court Action. True, Debtors did not have counsel to represent them in the State Court Action when Deutsche Bank obtained the Summary and Default Judgment. But Debtors raised no substantive defense in the State Court Action other than to state that Deutsche Bank's agent had agreed to a loan modification. Because Debtors have raised no substantive defense to foreclosure in the State Court Action, and presented no evidence to this Court of such a defense, it appears that a denial of Deutsche Bank's Motion to Annul the Stay would cause additional,

---

528 n.13 (Bankr.D.N.M. 2010). "Actions taken without notice or knowledge on the part of a creditor of the commencement or pendency of the bankruptcy case nevertheless violate the stay, but the violation is merely 'technical' and no damages are to be awarded." *Id.* at 523.

[13] Debtors' counsel argued that it is not apparent from the face of the Motion that Deutsche Bank why it sought to annul the stay. Paragraph 5 of the Motion to Annul Stay asserts that Deutsche Bank was not aware of the bankruptcy filing before the entry of the Default and Summary Judgment. *See* Exhibit 27. The Motion to Annul Stay's prayer for relief requests the Court "for an Order Abandoning property and annulling the automatic stay imposed by the filing of the bankruptcy action pertaining to the Debtor(s) and the property, nunc pro tunc to March 24, 2011, in order that it may proceed with and conclude the foreclosure action . . ." *Id.*

10

unnecessary expenses and delay, only to result in another summary judgment in favor of Deutsche Bank in the State Court Action at a later date.  Further, if the state court believes the Summary and Default Judgment should be set aside under the circumstances, it still has the power to act.

Factors 2) and 6) regarding the Debtors' conduct weigh in favor of the Debtors.  Even though Mr. Schumann did not appear at the hearing on March 30, 2011 in the State Court Action and did not contact counsel for Deutsche Bank to inform her of the pending bankruptcy before the scheduled hearing date, the Court does not perceive that Debtors were "stealthily silent" in an attempt to trap Deutsche Bank into violating the automatic stay.  And there is no evidence that the Debtors filed their bankruptcy case in bad faith or have otherwise acted in bad faith in these proceedings.

Factor 4), how quickly Deutsch Bank sought to annul the stay, is somewhat mixed.  Deutsche Bank filed the Motion to Annul Stay within three weeks of learning of the Debtors' bankruptcy filing.  However, it has taken more than four years for Deutsche Bank to prosecute the Motion to Annul Stay.  The delay is attributable in part to the Court closing the bankruptcy case and vacating the final hearing on the Motion to Annul the Stay in August 2011.  Had the Debtors not received a discharge and the bankruptcy case not been closed, the Court would have held a hearing on the Motion to Annul Stay long ago.  Nevertheless, Deutsche Bank did not seek to reopen the bankruptcy case so the hearing could be held for more than four years.  During that time, the parties engaged in ongoing negotiations in an attempt to reach agreement on modification of the loan terms.  Arguably the delay actually benefitted the Debtors because they have been able to remain in their home without making payments on the mortgage and avoid foreclosure for a significant period of time.

11

Based on the foregoing, the Court concludes that the Motion should be granted. Deutsche Bank has satisfied its burden of proof to annul of the automatic stay, and Debtors have not met their ultimate burden of demonstrating that the surrounding facts and circumstances do not warrant relief. The automatic stay is retroactively annulled to March 29, 2011 for the purpose of validating the Summary and Default Judgment entered in the State Court Action. The Court will enter a separate order consistent with this Memorandum Opinion.

_____
ROBERT H. JACOBVITZ
United States Bankruptcy Judge

Date entered on docket: February 13, 2016

COPY TO:

Karen H Bradley
Little, Bradley & Nesbitt, P.A.
Attorney for Deutsche Bank
P.O. Box 3509
Albuquerque, NM 87190

Ronald E Holmes
Attorney for Debtors
112 Edith Blvd NE
Albuquerque, NM 87102-3524